## HIGGS *against* STIMMEL.

Four children, to whom a tract of land was devised, made an amicable partition and valuation thereof, each who received land of more value agreed to pay to the others, so as to make the shares equal. Possession was taken of the several parts in pursuance of the partition. More than twenty-one years thereafter, one of the devisees, to whom land of less value was allotted, brought a joint-action of eject- ment against the owners of the other shares, in order to compel the payment of the amount due to him; in which it was *held* that he was not entitled to recover.

ERROR to the Common Pleas of *Westmoreland* county.

This was an action of ejectment, in which *William Higgs* and others, heirs at law of *Mary Insenhour*, who was *Mary Mellin- ger*, were plaintiffs, and *Isaac Stimmel* and others were defend- ants.

On the 20th of February, 1788, *John Mellinger* obtained a war- rant for four hundred acres of land, upon which *Benjamin Lodge*, the deputy surveyor, surveyed five hundred and forty-four acres. It did not appear that this survey had ever been returned. *John Mellinger* died in 1802, having first made a will by which he de- vised all his real estate to his four children, of whom the plaintiffs represented one, and the defendants, as to the title to this land, the other three. In 1803, the children agreed to make an amica- ble partition and valuation, and to give *William Turnbull* one hundred acres of it, for procuring a patent for the residue. After this one hundred acres was taken off, the land was divided into four parts, as nearly equal in quantity as convenient, but unequal in value; that part allotted to *Mary Isenhour*, the plaintiff's ances- tress, being of less value than any of the other allotments. The parties agreed that each should pay to the other as much as would make their shares equal. Each one took possession of the part al- lotted to him; but it did not appear that deeds had ever been exe- cuted. This action of ejectment was brought in 1827 against the owners jointly of the three parts of the said land, in order to com- pel the payment of the amount which was due to *Mary Isenhour*, in order to make her share equal to that of the other devisees of *John Mellinger.*

The court below was of opinion that the plaintiffs were not en- titled to recover, and so instructed the jury; who found a verdict accordingly.

*Foster* for plaintiff in error.

*Armstrong, contra,* whom the court did not hear.

The opinion of the court was delivered by

KENNEDY, J.—The errors assigned present but two question ap- plicable to the case, as it was made out by the plaintiff's own tes- timony in the court below.

They are, first—Was the parol partition, which was made of the land, and the lapse of time since that, up to the bringing of this action, a divestiture of all right on the part of the plaintiffs and their ancestress, to the land divided and apportioned among, and taken exclusive possession of, by the other divisees and tenants in common; and such evidence of payment of the money, which was to have been paid by them respectively to *Mary Mellinger*, as to bar the plaintiffs of their action for this cause?

Second—Was there such an interest in *Mary Mellinger* at any time to the one hundred and seven acres and one hundred and seven perches, as to enable her or her heirs to maintain this action; and if there was, has it been abandoned or relinquished by her and the other devisees, in making the partition as they did, together with the length of time that has passed away since, without any claim being made to it, until the commencement of this suit?

It would seem from what has been shown, and from the charge of the court below to the jury, that certain points were discussed by the counsel for the plaintiff, which the court there undertook to answer in their charge to the jury, and are assigned here for error, that were not necessarily involved in the case; and, therefore, although the court may not have stated the law correctly upon them, it would be no good ground for reversing their judgment; if the plaintiffs were clearly not entitled to recover from their own showing.

In this case a parol partition of the land devised by the testator, was made between the parties in 1803; the lines of partition were run and distinctly marked upon the land; each one of the four devisees took the possession exclusively of his or her respective purpart and allotment, according to the division which had been made, and continued to possess the same in severalty from that time down to the bringing of the action.    That such partition of the land is good, and a complete destruction of the tenancy in common that was created by the will of the testator, there can be no doubt.    The case of *Syler* and *Eckert*, 1 *Bin.* 378, is decisive on this point.    It is, however, contended by the counsel for the plaintiffs, that as there was a valuation of the several allotments connected with the partition, and forming a part of the same transaction, under the same agreement; and that under this agreement, in order to make the purpart assigned to and taken by *Mary Mellinger*, the mother of the plaintiffs, equal to the other allotments; there was a sum of money to have been paid to her by each of the other devisees, whose several shares were of more value than hers; that for this money, she, by the very terms of their agreement, as testified by one of the witnesses, acquired a lien upon the shares of the other devisees, and if this money were not paid to her, she or her heirs might maintain their action of ejectment to enforce the payment of it.

(Higgs *v.* Stimmel.)

Admit that such was the nature of the agreement, and that it gave the mother of the plaintiffs a right to enforce the payment by action of ejectment, would it not perhaps have been more correct to have brought a separate action of ejectment against the terre-tenants or occupiers of each share? for it cannot be pretended that any one of them was bound, nor that his or her share of the land was bound for the payment of more than his or her own portion of the money. But waiving all form and exception to the manner of bringing the action, can *Mary Mellinger* or her heirs maintain this action for this purpose after the money has been paid to her? Surely not. The lapse of time in this case, from the making of the partition, the time when the money ought to have been paid, being upwards of twenty years; nay, upwards of twenty-four, to the time of commencing this action, was sufficient evidence of the payment of the money; indeed, it raised a presumption in law, *per se,* that was conclusive, there being no testimony given in the case to rebut it. The jury were bound to presume that the money was paid; and the court were bound to tell them that on this ground alone, if no other, the plaintiffs could not recover against the defendants, or any of them, for and on account of the money which was claimed. See *Boyd* v. *Grant,* 13 *Serg. & Rawle,* 124.

But it is urged that this presumption was rebutted by the evidence of *Thomas Simpson,* who testified that *Isaac Stimmel,* one of the defendants, about five years before the trial, told him that "there was something laying against the land—that some day or other he would be brought into the *mud* about it." This declaration, even if true, is too vague and unmeaning to rebut the presumption of payment arising from the lapse of time in this case. It is certainly nothing like an admission that any money was due to *Mary Mellinger* or her representatives, for and on account of his own share, or that of any of the others. *Mary Mellinger* or her representatives do not appear to have been even named upon the occasion; nor was there any reference to them in the conversation at the time. Beside, *Isaac Stimmel's* declaration could be no evidence to rebut such a presumption, excepting as to himself and his share of the land. The court below were right in charging the jury against the plaintiffs as to this claim; and although the most apt reasons may not have been advanced for their opinion, yet a right judgment is not to be reversed because the court below may have given a wrong reason for it.

I now come to examine the right of the plaintiffs to recover the one-fourth of the one hundred and seven acres and one hundred and seven perches, and allowance of six per cent., &c. which was thrown out at the time of the partition, and has since been taken possession of by *John Mellinger,* one of the defendants. Although *Benjamin Lodge,* the deputy surveyor, had made a survey upon the war-

(Higgs *v.* Stimmel.)

rant of the testator, which called but for four hundred acres, and included within that survey these one hundred and seven acres and one hundred and seven perches, yet it was never returned into the surveyor general's office, and could not have been accepted of if it had, if known at the time, that it contained, as was the fact, upwards of five hundred and forty-four acres; for the limitation in this respect is, that the survey shall not contain an excess beyond the quantity mentioned in the warrant, exceeding the rate of ten per cent. The devisees in dividing the real estate devised to them by the testator, left these one hundred and seven acres and one hundred and seven perches, out of view altogether. The quantity taken and divided was four hundred and thirty-six acres and one hundred and seven perches, as much as could have been legally returned and accepted of under the warrant. For the one hundred and seven acres, then, it does not appear that the testator himself had any right, unless he had given up an equal quantity from some other part of his survey. Indeed, it would seem as if he was aware of his having embraced more land in his survey than his warrant would cover, and that he had agreed to give this one hundred and seven acres to a certain Mr. *Turnbull* for patenting the remaining four hundred and thirty-six acres to him. Upon this principle the devisees acted in making partition of the estate devised to them; and did not consider the one hundred and seven acres as any part or portion of it. It does not appear that there ever was any warrant for this piece of land containing the one hundred and seven acres; nor that any settlement was ever made upon it until *John Mellinger*, one of the defendants, made it about twelve years before the trial of this cause below. It appears to me that the testator had no title or right to this land at the time of his death, and if so, none could pass by his will or otherwise from him to the devisees. But supposing that the devisees, after the testator's death, might have secured this piece of land under the warrant, it could only have been done by leaving out of the survey an equal quantity elsewhere; this, however, they did not do, but chose to leave this one hundred and seven acres out, and to divide the rest; which was an appropriation of the land so divided to the warrant, and a relinquishment of the one hundred and seven acres. I think that the plaintiffs have no right to any part of this land. The court below were right, also, in charging against the plaintiffs on this branch of their claim.

All that was said by the court below to the jury, in respect to the statute of limitations being a bar to the plaintiff's recovery was unnecessary, for it apart, they showed no such title as could enable them to recover any part of the land claimed by them.

Judgment affirmed.